MCDONALD *v.* LIFE & CASUALTY INS. CO.

(*Nashville,* December Term, 1934.)

Opinion filed February 23, 1935.

B. O. BRILEY and R. C. BOYCE, both of Nashville, for plaintiff in error.

MOREAU P. ESTES, of Nashville, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought in April, 1933, to recover on an accident policy for the loss of a foot resulting from a collision, in 1931, of the motorcycle on which plaintiff was riding, with an automobile. The policy was of the specifically limited type, with a weekly premium of ten cents. The defense was twofold: (1) That the contract did not include or cover one riding on a motorcycle; and (2) that no recovery was provided for the loss of the foot or limb unless *severed* at the time of the accident, or within 30 days thereafter.

The case was heard by the trial judge on a stipulation of facts and dismissed. Plaintiff appeals.

The policy contracts for the payment of $1,000 for the loss of a foot ''by the collision of or any accident to any private horse-drawn vehicle, or motor-driven car in which insured is riding,'' or from ''being accidentally thrown from any such vehicle or car,'' etc.; but this condition is plainly incorporated: ''In every case referred to in this policy the loss of any member shall include only the loss by severance at or above the ankle or wrist joints;'' followed by this express limitation: ''No indemnity will be paid . . . where . . . the loss of the members . . . does not occur within thirty days of the accident.''

It appears from the stipulation that, while ''riding a motorcycle with side car attachment'' for conveyance of merchandise, along an east and west alley in Nashville, extending from Third to Fourth avenues, an automobile, proceeding along a north and south alley extending from Church to Union streets, collided with the motorcycle

at an intersection; that the "plaintiff was thrown violently from said motorcycle to the pavement." Quoting further from the stipulation: "Plaintiff suffered a compound comminuted fracture of both bones of his left leg between the knee and ankle. The blood vessels of said leg were cut, a large amount of the soft tissue of his leg was destroyed and there was a complete loss of the use of his right foot from and after said date. However, his leg was not quite completely severed at the time of and by reason of the said accident, there being a small amount of sound tissue at the point of the wound still connecting his leg, and his physician or surgeon, mistakenly hoping to save his foot and the lower part of his leg, did not complete the severance of his leg at said point at that time, but attempted to bind and heal said wound and save said leg. Thereafter, and more than 30 days after the said injury, it was found necessary as a result of said injury to amputate his foot or leg at the point of said wound above the ankle and between the ankle and knee and this was done by his said physician or surgeon."

The language of the stipulation follows that of the declaration, which charged that "plaintiff, while riding a motorcycle, with side car attached," was collided with and injured, and that the severance of the limb was made by the surgeon "thereafter, however, but more than 30 days after the injury." It does not appear from either the declaration or the stipulation how long a time elapsed after the injury was received before the limb was severed. The accident occurred on the 4th of October, 1931, and the suit was not filed until April 6, 1933, 18 months later. This, however, is material only in connection with the second defense of the company; namely, that

loss *by severance* within 30 days of the injury is a condition of recovery.

We consider first the defense that plaintiff was riding *on* a motorcycle, and not *"in"* a "motor-driven car," and was therefore not within the terms of the policy contract. On the brief for plaintiff in error it is said that the trial judge considered this question ruled by *Moore* v. *Life & Casualty Ins. Co.,* 162 Tenn., 682, 683, 40 S. W. (2d), 403. While the language therein held not to include a motorcycle was "motor-driven automobile," and here it is "motor-driven car," it is apparent from a reading of that opinion, and particularly the approved quotations from other decisions, that these terms were treated as synonymous. For example, in support of the conclusion therein announced, Mr. Justice COOK quoted from a number of opinions, in all of which the phraseology considered was "a motor-driven car." See *Laporte* v. *Insurance Company,* 161 La., 933, 109 So., 767, 48 A. L. R., 1086 (riding in "a motor-driven car"); *Perry* v. *Insurance Co.,* 104 N. J. Law, 117, 138 Atl., 894 ("motor-driven car"); *Anderson* v. *Insurance Company,* 197 N. C., 72, 147 S. E., 693 ("motor-driven car"); *Landwehr* v. *Insurance Co.,* 159 Md., 207, 150 Atl., 732, 70 A. L. R., 1249 ("private automobile or motor-driven car"); *Salo* v. *Insurance Company,* 257 Mass., 303, 153 N. E., 557 ("motor-driven car"). And the language of Mr. Justice COOK, in part, was: "it is a matter of common knowledge that in ordinary conversation a motorcycle is not referred to as an automobile *or* as a car," etc. In the opinion of Mr. Justice COOK in the more recent case of *Life & Casualty Co.* v. *Cantrell,* 166 Tenn., 22, 57 S. W. (2d), 792, extending "automobile" to cover a "motor truck," he further emphasizes the exclusion of

the motorcycle from the automobile class, in which latter class the motor-driven car belongs. The only question arising on this record now open for disposition, therefore, is whether or not the fact that the motorcycle on which plaintiff in error was riding in this case had attached to it a side car supported by a third wheel brings this motorcycle within the definition of a motor-driven car or automobile, and whether the fact that plaintiff was riding, not "in," but on top of, the vehicle, is of determinative consequence.

In *New Amsterdam Casualty Co.* v. *Rust*, 164 Tenn., 22, 46 S. W. (2d), 70, the vehicle, an automobile, was within the terms of the policy, but this court held that one riding, not "in," but "on," the running board of the car, was not covered. In the opinion by Mr. Justice McKinney emphasis was properly placed on the element of added danger incident to riding on the outside, rather than in the vehicle, and his reasoning has application here. This policy, as did the one considered in that case, employed the term "in;" here the language being "car in which insured is riding," there, "riding in a private automobile."

But, aside from this, if it be conceded, as it must now be, that one riding on a motorcycle is not covered, we are unable to conceive that a materially distinctive situation is created by the mere addition of the attachment described. Certainly no element of safety is added; perhaps to the contrary. The rider is still riding on a motorcycle; that is, "a bicycle having a motor attached so as to be self propelled."

It will be observed that we have here a specifically limited policy carried at a very low premium. The provisions for indemnity are plainly printed, and the limi-

tations and conditions are equally so, in identical type. There is no excuse for misunderstanding. And the company was justified by numerous antecedent court decisions in relying on the distinction recognized therein between riding in a motorcar and on a motorcycle; the difference in risk being too obvious for dispute. The risk element forms the basis of all tabulated insurance premiums, and the insurer has a right to insist that the risk he undertakes to assume shall not be enlarged beyond the terms of his contract. *American Automobile Ins. Co.* v. *Jones,* 163 Tenn., 605, 608, 45 S. W. (2d), 52. Concurring with the trial court on this ground, it becomes unnecessary to discuss the second ground relied on. The judgment must be affirmed.