**Andrew Johnson BANK,**
**Plaintiff-Appellant,**

v.

**Ben M. CRUMLEY, II and Harry**
**Crumley, Defendants,**

**and**

**James L. Hamlin, Carl V. Allman, E.B.**
**Dutton, Clinton Waddell and Thomas**
**E. Frutchey, Defendants-Appellees.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

June 14, 1985.

Application for Permission to
Appeal Denied Sept. 3, 1985.

Jerry W. Laughlin, Greeneville, for plaintiff-appellant.

G.P. Gaby, Greeneville, for defendants-appellees.

CRAWFORD, Judge.

Plaintiff Andrew Johnson Bank's complaint sought *inter alia* a declaratory judgment that its subsequently recorded trust deed had priority over defendants' trust deed recorded earlier in time. From an adverse judgment the bank has appealed.

Upon dissolution of Hamlin-Allman Steel Corporation and Hamlin-Allman Enterprises, Inc., the defendants, Hamlin, Allman, Dutton, Waddell and Fruchey, as all of the stockholders of the two corporations, became the successors in interest to the matters involved in this litigation. Therefore, for clarity, reference in the future to defendants will also mean the corporations as the parties originally involved in the transactions.

As a result of negotiation, on March 28, 1978, defendants executed a written Memorandum of Terms of Agreement with Ben M. Crumley, II, wherein the defendants agreed to sell and Crumley agreed to purchase the real estate and personal property of the two corporations for a purchase price of $725,000 and other consideration. Ninety percent of the purchase price was to be financed by the defendants and secured by a lien on the personal property assets conveyed and a deed of trust for the real estate. The agreement provided in part:

> Appropriate security instruments will be made and provided, however, the Parties of the First Part [the defendants] agree that—in order to allow for the financing of working capital, each and all security instruments may be subordinated to an appropriate deed of trust, from time to time, up to and including a total of $150,-000.00.

The sale of the assets by appropriate instruments, including a warranty deed to the real estate pursuant to the memorandum, occurred on May 24, 1978. On that same date defendants took a trust deed from Crumley securing the real estate. That trust deed was recorded on May 25, 1978, in the Register's Office for Greene County, and contained the following provision:

> The holders [defendants] agree to subordinate these liens from time to time to allow first parties [Crumley] to obtain additional financing up to and including a total of $150,000.

On May 24, 1978, the bank made a loan of $150,000 to Crumley and as security Crumley executed a trust deed on the property acquired from defendants and the trust deed was subsequently recorded on May 30, 1978, in the Register's Office for Greene County.

The testimony at trial revealed that at the time the bank made its loan to Crumley, the bank's lending officer had a copy of the Memorandum of Terms of Agreement dated March 28, 1978, and a copy of the deed of trust held by defendants. Notes in the bank's loan file made by the loan officer at the time of the Crumley loan contained a list of four items under the word "need," and the first item listed is "subordination agreement—Hamlin-Allman." Defendants testified that they had no knowledge of the bank's loan to Crumley until some five years later after Crumley was in default on both loans and defendants were asked by the bank to execute a subordination agreement. Defendants refused and when the bank sought judgment against Crumley, it joined defendants as parties and sought a declaratory judgment that the deed of trust Crumley had given to defendants was subordinate to the deed of trust he had given to the bank.

At trial, Crumley admitted using part of the $150,000 loan for the 10% downpayment to buy the defendants' corporations. A Certified Public Accountant testified for the bank that in his opinion the use of the loan proceeds would result in a positive change in Crumley's working capital. The bank introduced no proof concerning Crumley's use of the remaining loan funds.

The bank presents numerous issues for review, but we perceive the real and controlling issue to be:

> Whether the trial court erred in declaring that defendants' deed of trust had priority over the bank's deed of trust.

In support of its contention that the trial court ruled erroneously, the bank asserts that the language in defendants' deed of trust unequivocally subordinates defendants' lien to the bank's lien; that the defendants, by having the provision in the trust deed, are estopped to deny the bank's priority; and that the provision of the memorandum agreement concerning the purpose of subordination cannot be relied upon since it was not included in the deed of trust or in the alternative, if relied upon the court was in error in its finding.

The Chancellor did not think it necessary to consider the bank's many contentions, but felt that the case could be decided on the question of whether the bank's deed of trust secured a loan made for "working capital" as contemplated by the memorandum agreement between the parties. He found, "that the bulk of the loan proceeds was used by Crumley as his downpayment to the defendants," and that such funds did not constitute "working capital" as contemplated by the agreement. The chancellor further found that although the language in the deed of trust is less restrictive than the language of the agreement, the parties did not intend to alter or amend the language of the agreement.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

As we view the record, not only can we not say that the evidence preponderates against the findings of the chancellor, but we find the evidence preponderates in favor of the findings of the chancellor.

Although the chancellor's action is dispositive of the case, there are other compelling reasons why the bank's assertions on this appeal are without merit. The bank asserts that the provision in the trust deed is an unequivocal subordination of the defendants' trust deed to that of the bank.

We disagree. The provision of defendants' trust deed says that they agree to subordinate "from time to time," which indicates an executory agreement to be accomplished at some later date.

In construing contracts, the words expressing the parties' intentions should be given the usual, natural and ordinary meaning. *Moore v. Life & Casualty Ins. Co.*, 162 Tenn. 682, 40 S.W.2d 403 (1931). If the clause in the deed of trust in question is susceptible to two meanings, the course of previous dealings, the circumstances in which the clause is placed in the deed of trust, and the situation of the parties are matters for the court to properly consider in determining the intention of the parties. *See Kroger Company v. Chemical Securities Company*, 526 S.W.2d 468 (Tenn.1975); *Jeffers v. Hawn*, 186 Tenn. 530, 212 S.W.2d 368 (1948).

Certainly the clause in the prior memorandum agreement providing for subordination "from time to time" in order to allow for "working capital" makes it clear that the parties contemplated some further act to accomplish subordination. This interpretation is even more compelling when we consider the bank's actions. At the time the bank made the loan, the bank loan officer knew of the defendants' trust deed and memorandum agreement, and he very clearly recognized that in order to have a prior trust deed the bank needed a subordination agreement from defendants. Some five years later, when it became clear to the bank that it must resort to the security to collect its money, the bank, again recognizing that the deed of trust clause required something more, requested a subordination agreement from defendants.

The acts and declarations of the parties may be considered by the court to determine the interpretation of instruments as considered by the parties themselves. *See Canton Cotton Mills v. Bowman Overall Company*, 149 Tenn. 18, 257 S.W. 398 (1923). As noted by Justice Brock in *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn.1983):

The rule of practical construction is particularly applicable to this case. That rule, long recognized and applied in this jurisdiction, is that the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered.

The evidence in this case is clear and convincing that the clause in defendants' trust deed was not considered by anyone as a subordination clause in and of itself.

██ Bank contends in the alternative that defendants should be estopped to claim that their deed of trust has priority over bank's deed of trust. We find it difficult to follow bank's argument in this regard, but the record is clear that the bank had the facts at its disposal, was not misled to its detriment, and was not caused to take any course of action based upon the wording of the trust deed. *See Provident Washington Insurance Co. v. Reese*, 213 Tenn. 355, 373 S.W.2d 613 (1963). It is obvious that the lending officer of the bank knew that he needed to get a subordination agreement at the time the loan was made to Crumley. We find this argument by bank to be without merit.

Accordingly the judgment of the trial court is affirmed and costs are assessed against the appellant.

NEARN, P.J. (W.S.), and GODDARD, J., concur.